UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

        Plaintiff,                Case No. 16-CR-20433

                                        HON. NANCY G. EDMUNDS

v.

MAHMOUD RAHIM, M.D.,

        Defendant.

---

## DEFENDANT'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE

---

NOW COMES Defendant, by and through his attorney, Anjali Prasad, and respectfully requests that the Court order his compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by § 603(b)(1) of the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21. 2018).

                                Respectfully Submitted,

                                /s/ Anjali Prasad
                                ANJALI PRASAD (P75771)
                                Prasad Legal, PLLC
                                117 W. Fourth Street, Suite 201
                                Royal Oak, MI 48067
                                (248) 733-5006
Dated: May 12, 2020           aprasad@prasadlegal.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

        Plaintiff,                Case No. 16-CR-20433

                                  HON. NANCY G. EDMUNDS

v.

MAHMOUD RAHIM, M.D.,

        Defendant.

---

## BRIEF IN SUPPORT OF DEFENDANT'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE

The First Step Act of 2018 ("FSA") expressly permits Defendant Mahmoud Rahim ("RAHIM") to move this Court for compassionate release due to his age and chronic health conditions, which put him at a higher risk of contracting COVID-19 and falling severely ill. *See* 18 U.S.C. §3582(c)(1)(A)(i). Under the amended statute, a district court can reduce a sentence for "extraordinary and compelling reasons" in two circumstances: (i) upon motion of the Director of the Bureau of Prisons ("BOP"); or (ii) upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of

such a request by the warden of the defendant's facility, whichever is earlier.

18 U.S.C. § 3582(c)(1)(A). *See United States v. Cantu,* No. 05-cr-458, 2019

U.S. Dist. LEXIS 100923, at *6-12 (S.D. Tex. June 17, 2019) ("[u]nder the

newly amended § 3582(c)(1)(A) [defendant] has standing to bring this

motion "because more than 30 days elapsed between his reduction-in-

sentence request to the warden and a response").[1]

In this case, Rahim has satisfied the statutory requirement to wait 30

days after providing the warden with a request for compassionate release.

On March 24, 2020, Rahim made an electronic request to the Warden for

home confinement due to the COVID-19 pandemic.  On April 6, 2020,

Rahim made an electronic request to his Unit Manager for home

confinement due to the COVID-19 pandemic.  On April 15, 2020, Rahim

made an electronic request to both the Warden and Unit Manager for home

confinement due to the COVID-19 pandemic.  On April 21, 2020, Rahim

contacted the Warden and expressly requested compassionate release.  On

---

[1]     The Court may also waive the exhaustion requirement if a recognized exception
applies. *See, e.g., United States v. Coles,* No. 18-cr-20254, 2020 U.S. Dist. LEXIS 67591
(E.D. Mich. April 17, 2020); *Miller v. United States,* No. CR 16-20222-1, 2020 U.S. Dist.
LEXIS 62421 (E.D. Mich. April 9, 2020); *United States v. Zukerman,* No. 16 CR. 194
(AT), 2020 U.S. Dist. LEXIS 59588 (S.D.N.Y. April 3, 2020); *United States v.
McCarthy,* No. 3:17-CR-0230 (JCH), 2020 U.S. Dist. LEXIS 61759 (D. Conn. Apr. 8,
2020); *United States v. Perez,* No. 17 CR. 513-3 (AT), 2020 U.S. Dist. LEXIS 57265
(S.D.N.Y. Apr. 1, 2020) (waiving exhaustion requirement where defendant already at
"significant risk of suffering catastrophic health consequences" due to COVID-19
pandemic).

May 7, 2020, the Warden denied Rahim's requests for compassionate release.[2]

Extraordinary and compelling circumstances exist here that warrant Rahim's compassionate release. His age (Rahim turns 68 in November), combined with his underlying health conditions, place Rahim at increased risk of severe illness and death from a COVID-19 infection. Rahim's myriad health conditions include chronic obstructive airway disease (COPD), diabetes, hypertension, coronary artery disease, prostatic hypertrophy, and congestive heart failure. *See* PSIR, Paragraph 42. Rahim currently alternates between two inhalers (Albuterol, Asmanex), and takes the following medication: Lasix (congestive heart failure), Isosorbid mononitrate (coronary artery disease, hypertension), Metoprolol Tartrate (heart failure, coronary artery disease, hypertension), Losartan potassium (hypertension, congestive heart failure), Rosuvastatin Calcium (high cholesterol), Tamsulosin (prostatic hypertrophy), and Diltiazem.

As of May 7, 2020, BOP has confirmed at least 2,100 cases of COVID-19 among federal inmates and 365 cases among detention facility employees and personnel. COVID-19 Coronavirus, Federal Bureau of

---

[2]    In the meantime, on April 6, 2020, Rahim moved the Court to recommend that the BOP place him in home confinement for the remainder of his sentence, to protect him from contracting or transmitting COVID-19. (ECF No. 135). Although the Court denied Rahim's motion on April 29, 2020, it did note that it had "no objection to the FBOP granting Defendant the placement he requests." (ECF No. 135).

Prisons, https://www.bop.gov/coronavurs/.     These numbers are likely higher, as testing is only administered to inmates who manifest symptoms. *See, e.g., In the Matter of the Extradition of Manrique,* 2020 U.S. Dist. LEXIS16397, at \*2 (N.D. Cal. Mar. 19, 2020) ("screening people based on observable symptoms is just a game of catch up").

     Unfortunately, conditions of confinement create a serious risk for the spread of COVID-19, even among a healthy population.[3] Although the BOP may be doing everything in its power to slow the spread of COVID-19 within its facilities, the high density of prison populations makes federal prisons ideal transmission grounds for the virus.  *See, e.g.* Kimberly Kindy, *An Explosion of Coronavirus Cases Cripples a Federal Prison in Louisiana, THE WASHINGTON POST* (March 29, 2020). *See also* Claudia Lauer & Colleen Long, *US Prisons, Jails On Alert for Spread of Coronavirus, Associated Press* (Mar. 7, 2020). Rahim eats, sleeps, and interacts with individuals in a confined space, making it easier for the virus to spread once introduced.  He is also routinely in close contact with staff members who come and go from FCI Morgantown.   Moreover, basic disinfecting tools

---

[3]    *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities,* CENTER FOR DISEASE CONTROL (March 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guideance-correctional-detention.html.

such as alcohol-based soap, hand sanitizer, and wipes are wholly unavailable within the prison.

Plainly, Rahim is not a healthy individual. Given the highly infectious nature of COVID-19, the failure of the BOP to stop its spread, the inability of Rahim to practice any of the hygienic and social distancing techniques that CDC has advised to prevent rapid transmission, and the fact that his age and medical history render him at higher risk, this Court should find Rahim's legitimate medical risk is a sufficiently extraordinary and compelling reason to grant compassionate release. *See* U.S.C. §3582(c).[4]

Rahim's release is "consistent with applicable policy statements issued by the [United States] Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A), since he is a nonviolent offender with no prior criminal history. *See PSIR,* Paragraph 77 (Rahim "does not have any prior criminal convictions. There is no history of assaultive behavior. Therefore, the need to protect the public appears to be low").

Many courts have found that, for high risk individuals, communal prison confinement conditions satisfy the definition of "extraordinary and

---

[4]      The Sentencing Commission has provided guidance about what constitutes "extraordinary and compelling reasons" in Section 1B1.13 of the Sentencing Guidelines. U.S.S.G. §1B1.13. These reasons are classified in four categories: (1) the defendant's medical condition; (2) the defendant's age; (3) family circumstances; and (4) additional reasons "other than, or in combination with" the first three elements. *Id.* at cmt. N. 1(A)-(D).

compelling reason for release" because they make it impossible for vulnerable individuals to "protect [them]selves from the spread of a dangerous and highly contagious virus." *See, e.g., United v. Saad,* No. 16-20197 (E.D. Mich. Apr. 21, 2020)(finding that defendant's age, chronic kidney disease, hypertension, and sleep apnea are extraordinary and compelling reasons for release in light of the COVID-19 pandemic); *United States v. Sawicz,* Case No. 08-cr-287 (ARR) 2020 U.S. Dist. LEXIS 64418, at *6 (E.D. N.Y. April 10, 2020) (Covid-19 pandemic, combined with defendant's particular vulnerability to complications from COVID-19 because of his hypertension constitutes an "extraordinary and compelling" reason for his compassionate release"); *United States v. Williams,* Case No. 04-cr095/MCR, 2020 U.S. Dist. LEXIS 63824, at *7 (N.D. Fla. April 1, 2020) ("[A]n outbreak of COVID-19 in Williams' facility would likely have fatal consequences for him.  Based on these facts, the Court finds that Williams' deterioration in physical health is sufficiently serious to satisfy the medical criteria for a reduction in sentence."); *United States v. Gonzalez,* No. 2:18-CR-0232-TOR-15, 2020 U.S. Dist. LEXIS 56422, at *3 (E.D. Wash. Mar. 31, 2020) ("Defendant is the most susceptible to the devastating effects of COVID-19.  She is in the most susceptible age category (over 60 years of age) and her COPD and emphysema make her particularly

vulnerable … compassionate release granted."); *United States v. Campagna,* No. 16 Cr. 78-01 (LGS), 2020 U.S. Dist. LEXIS 54401, at *3 (S.D.N.Y. Mar. 27, 2020) ("Defendant's compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinarily and compelling reason to modify Defendant's sentence on the grounds that he is suffering from a serious medical condition that substantially diminishes his ability to provide self-care within the environment of the RCC."); *United States v. Muniz,* No. 4:09-CR-0199-1, 2020 U.S. Dist. LEXIS 59255, at *2 (S.D. Tex. Mar. 30, 2020) ("Because Defendant is at high-risk for severe illness from COVID-19 and because inmates in detention facilities are particularly vulnerable to infection, the Court finds that Defendant has demonstrated an extraordinary and compelling reason for compassionate release.").

To the extent the government argues that Rahim is somehow not in harm's way because FCI Morgantown does not report any confirmed cases of COVID-19, "Zero *confirmed* COVID-19 cases is not the same thing as zero COVID-19 cases." *United States v. Amarrah,* No. 18-cr-20464, 2020 U.S. Dist. LEXIS 80396 (E.D. Mich. May 7, 2020). The Bureau of Prisons recently discovered this when a 53-year-old inmate at FCI Milan went into respiratory failure, and tested positive for COVID-19 only after he was

transported to a local hospital. [5] That is because this disease spreads asymptomatically, and the BOP has yet to implement a universal testing regimen. *See* Sadie Gurman, *More Than 70% of Inmates Tested in Federal Prisons Have Coronavirus,* The Wall Street Journal (Apr. 30, 2020), https://www.wsj.com/artciles/more-than-70-of-inmates-tested-in-federal-prisons-have-coronavirus-11588252023 (noting that "prison officials expect [this number] to rise as they expand testing with the a focus on the hardest-hit facilities").  Thus, "the Court and the prison system can take no comfort in a lack of confirmed cases, and all parties should be deeply concerned by the lack of universal testing of inmates and staff."  *United States v. Amarrah, supra.*[6]

Nor should the government's patent response that Rahim may not "cut in line" carry any weight, since there is no reason any prisoner would lose access to home confinement should Rahim be released.  To the contrary, during this unprecedented pandemic, institutions with large prison populations should welcome a decrease in number of high-risk individuals confined therein. *See Basank v Decker,* No. 20 CIV. 2518 (AT). 2020 U.S. Dist. LEXIS 53191 (S.D.N.Y. Mar. 26, 2020) (holding public health and

---

[5]       This was FCI Milan's first reported inmate death due to COVID-19. https://www.bop.gov/resources/news/pdfs/20200427_press_release_mil.pdf

[6]       In fact Rahim was recently evaluated by the nurse practitioner when he was not feeling well, who expressly told him no COVID-19 testing kits were available.

safety are served best by rapidly decreasing number of individuals in confined conditions). Moreover, as discussed above, Rahim exhausted his administrative remedies with BOP. A defendant neither "cuts in line," nor "interfere[s] with [BOP's] process," by exercising his statutory right to seek judicial review. *United States v. Amarrah, supra.*

In short, the current conditions of Rahim's confinement, which he has no power to alter, expose him to a substantial risk of contracting COVID-19. And Rahim's age and numerous medical conditions render him substantially likely to suffer a dire outcome should he contract the virus. In light of the expectation that the COVID-19 pandemic will continue to grow and spread, *United States v. Colvin,* No. 3:19-CR-179, 2020 U.S. Dist. LEXIS 57962, at *4 (D. Conn. April 2, 2020), the reasons justifying Rahim's release are compelling and extraordinary.[7] Therefore, Defendant respectfully moves this Court for his immediate compassionate release.

<div style="margin-left:40%">

Respectfully Submitted,

/s/ Anjali Prasad
ANJALI PRASAD (P75771)
Prasad Legal, PLLC
117 W. Fourth Street, Suite 201
Royal Oak, MI 48067
(248) 733-5006
aprasad@prasadlegal.com

</div>

Dated: May 12, 2020

---

[7]     Rahim would serve the remainder of his sentence on home confinement in his Oakland County residence, with his wife of 28 years.

10

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing paper with the Clerk of the Court using the ECF system that will send notification of such filing to all registered parties.

/s/ Anjali Prasad
Anjali Prasad (P75771)